In re The PRUDENTIAL INSURANCE
COMPANY OF AMERICA SALES
PRACTICES LITIGATION

MDL No. 1061.
CIV. A. No. 95–4704.

United States District Court,
D. New Jersey.

Dec. 1, 1997.

Andy Dogali Blasingame, Forizs & Smiljanich, P.A., St. Petersburg, FL, Liaison Counsel for Plaintiffs in Policyholder Actions.

Nancy Faggianelli, Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tampa, FL, Liaison Counsel for Agent Defendants in Policyholder Actions.

Neil J. Maune, Granite City, IL, Lead Counsel for Plaintiffs in Agent Actions.

Melvyn I. Weiss, Milberg Weiss Bershad Hynes & Lerach, New York City, Michael B. Hyman, Much Shelist Freed Denenberg & Ament, P.C. Chicago, IL, Class Action Plaintiffs' Co-Lead Counsel.

Allyn Z. Lite, Goldstein Lite & DePalma, Newark, NJ, Class Action Plaintiffs' Liaison Counsel.

John J. Gibbons, Crummy, Del Deo, Dolan, Griffinger & Vecchione, Newark, NJ, for Defendant Robert C. Winters.

Frederick B. Lacey, LeBoeuf, Lamb, Greene & MacRae, L.L.P., Newark, NJ, for Defendant the Estate of Robert A. Beck.

Alan E. Kraus, Riker, Danzig, Scherer, Hyland & Perretti, Morristown, NJ, Barry A. Cooke, Law Office of Alan Wasserman, Woodbridge, NJ, for Bowen.

Dwight D. Brannon, Dwight, D. Brannon & Associates, Dayton, OH, for Buckman.

Daniel C. Brown, Katz, Kutter, Haigler, Alderman, Marks, Bryant & Yon, P.A., Tallahassee, FL, Donald Y. Bennett, Carl J. Robie, III, Steves & Robie, Sarasota, FL, for Bennett.

Daniel C. Brown, Katz, Kutter, Haigler, Alderman, Marks, Bryant & Yon, P.A., Tallahassee, FL, John A.C. Guyton, III, Rywant, Alvarez, Jones & Russo, P.A., Tampa, FL, for Davis.

Robert A. Marks, Bernstein & Marks, Newark, NJ, for Dear.

Edwin R. DeYoung, Liddell, Sapp, Zivley, Hill & LaBoon, L.L.P., Dallas, TX, Leon Crum, Law Offices of Ernesto Gamez, Jr., P.C., Brownsville, TX, for Gamez.

Kathy K. Condo, Reed Smith Shaw & McClay, Pittsburgh, PA, Richard L. Rosenzweig, Rosenzweig & Rosenzweig, Pittsburgh, PA, for Kilgallon.

Jose A. Cardenas, Lewis & Roca LLP, Phoenix, AZ, Paul Holloway, Holloway, Odegard & Sweeney, P.C., Phoenix, AZ, Michael J. Rusing, Rusing & Lopez, P.L.L.C., Tucson, AZ, for Lopez.

Thomas S. Lawson, Jr., Capell, Howard, Knabe & Cobbs, P.A., Montgomery, AL, Lanny S. Vines, Emond & Vines, Birmingham, AL, for Mallard.

Charlie Whatley, Eufaula, AL, Pro se.

Frederick deB. Bostwick, III, Naman, Howell, Smith & Lee, Waco, TX, Damon L. Reed, Dunnam & Dunnam, L.L.P., TX, for Marrs.

Jose A. Cardenas, Lewis & Roca LLP, Phoenix, A, Robert D. Taichert, Taichert & Wiggins, P.C., Albuquerque, NM, Ernest L. Padilla, Padilla Law Firm, P.C., Santa Fe, NM, for Ortega.

Brenton N. Ver Ploeg, Brenton N. Ver Ploeg, P.A., Miami, FL, Andrew C. Hall, Andrew Hall & Associates, Miami, FL, Scott M. Sarason, Rumberger, Kirk & Caldwell, Miami, FL, William J. Fiore, Andrew C. Hall, Meyner & Landis, Newark, NJ, for Perlman.

Jose A. Cardenas, Lewis & Roca LLP, Phoenix, AZ, Paul Holloway, Holloway Odegard & Sweeney, P.C., Tucson, AZ, Michael J. Meehan, Meehan & Associates, Tucson, AZ, Richard D. Burris, Law Offices of Richard D. Burris, Tucson, AZ, for Pompa-Lopez.

Paul J. Wagstaffe, Wagstaffe & Schwarzkopf, Sacramento, CA, for Reed.

Jeffrey M. Siminoff, Riker, Danzig, Scherer, Hyland & Perretti LLP, Morristown, NJ, Michael I. Halfacre, Waldman, Moriarty & Halfacre, Red Bank, NJ, for Ruffins.

Pearson & Crass, P.A., Woodbury, NJ, for Rutledge.

Andy Dogali, Blasingame, Forizs & Smiljanich, P.A., St. Petersburg, FL, Counsel to Salvatore Flauto, James Griffis and Lola Meyer.

Robert M. Ball, Law Offices of Robert Ball, Beverly Hills, CA, Counsel to Kenny W. Harper, Daniel Harper and Russell C. Harper.

Dan Zeidman, Law Offices of Dan Zeidman, El Cajon, CA, Counsel to Scott D. Naliboff.

C. Wayne Litchfield Corp., Oklahoma City, OK, Counsel to Gerald Reed.

J. Camille Gray, San Antonio, TX, Pro Se Class Member.

Sonnenschein Nath & Rosenthal, Reid L Ashinoff, Michael H. Barr, John Grossbart, David C. Jacobson, Lorie A. Chaiten, Helen B. Kim, New York City, for The Prudential Insurance Company of America.

## *OPINION*

WOLIN, District Judge.

This matter is before the Court on the motion of petitioner The Prudential Insurance Company of America ("Prudential"), to enforce the Final Order and Judgment of this Court and to dismiss pending actions or to enjoin pending or threatened actions by certain class members who failed to opt out of the Class Settlement prior to the opt-out deadline. The class members have moved for the Court to use its discretionary power under Federal Rules of Civil Procedure 6(b), 60(b), and 23(d) to allow them additional time to opt out of the class or to find that their claims are not encompassed by the Class Settlement. For the reasons stated herein, Prudential's motion will be granted, and the class members cross-motions will be denied.

## BACKGROUND

On October 28, 1996, this Court entered an order conditionally certifying for settlement purposes only the plaintiff class under Rule 23(b)(3), which encompasses, with some exceptions [1], all persons who own or owned at termination an individual permanent whole life insurance policy issued by Prudential or any of its United States life insurance subsidiaries during the class period of January 1, 1982 through December 31, 1995 (the "Class Period"). (Oct. 28, 1996 Order ¶ 1.) [2]

### A. The October 28, 1996 Order

In the October 28, 1996 Order, the Court scheduled a Settlement Hearing on January 21, 1997 to determine whether the proposed settlement ("The Stipulation of Settlement") should be finally approved by the Court and directed Prudential to notify class members of the terms of The Stipulation of Settlement. (Oct. 28, 1996 Order ¶¶ 1, 7–9.) The Court

detailed the procedure for pre-hearing notice as follows:

(a) *Notice by Mail.* Notice substantially in the form annexed to the Stipulation as Exhibit F–2 (the "Class Notice") shall be mailed, at Prudential's expense, by first class mail, postage prepaid, no later than 60 days before the Settlement Hearing, to the last known addresses of all Policyholders. The Class Notice will (i) contain a short, plain statement of the background of the Actions, the conditional Class certification and the proposed settlement, (ii) describe the proposed forms of relief, (iii) explain the procedures for receiving or participating in the proposed forms of relief, (iv) explain Class Members' rights of exclusion, objection and appeal, and (v) state that any relief to Class Members is contingent on the Court's final approval of the proposed settlement.

The Class Notice will include, to the extent practicable, (i) each Policyholder's name and the mailing address with respect to each Policy, as reflected in Prudential's records, (ii) the policy number of each Policy in which the Policyholder has or had an ownership interest, (iii) a notation as to the form(s) of relief for which the Policyholder may be eligible; and (iv) the identity of co-owners of the Policies, as reflected in Prudential's records.

(b) *Notice by Publication.* In addition to mailing the Class Notice to Policyholders, Prudential will publish a summary notice of the proposed settlement, the Settlement Hearing and Class Members' exclusion, objection and appeal rights in the national editions of *The New York Times* (business section) and *The Wall Street Journal, in USA Today, The Star Ledger* and in such other newspapers

---

1. The class excludes: (1) policyholders who were represented by counsel and who signed a document in connection with a settlement of a claim, action, lawsuit or proceeding, pending or threatened, that released Prudential with respect to their policies; (2) policyholders that are corporations, banks, trusts, or other non-natural entities that purchased policies as corporate or trust-owned life insurance and under which either (a) there are fifty or more separate insured individuals, or (b) the aggregate premium paid over an eight year period, ending with the close of 1996,

exceeds one million dollars; and (3) policyholders who were issued policies in 1995 by Prudential Select Life Insurance Company of America. (Mar. 17, 1997 Opinion, Findings of Fact ¶ 1 n. 7.) (reported as *In re The Prudential Ins. Co. of Am. Sales Practices Litig.,* 962 F.Supp. 450 (D.N.J.1997)).

2. Approximately eight million class members own approximately 10.7 million insurance policies.

and/or periodicals and on such dates as are determined by Prudential in consultation with Lead Counsel and subject to this Court's approval as to the form and dates of such notice. Notice will be published at least once in each of the above-named publications no later than 50 days before the Settlement Hearing.

(c) *Remailing and Additional Notice.* Prudential, or the Claimant Group Administrator, as defined in the Stipulation, (whose job it is, *inter alia,* to help implement the terms of the proposed settlement) shall (i) remail any notices returned by the United States Postal Service (the "Postal Service") with a forwarding address that are received by Prudential or the Claimant Group Administrator at least 30 days, if practicable, before the Settlement Hearing, (ii) retain an address research firm to research any returned notices that do not include a forwarding address, and (iii) provide copies of any returned notices to the address research firm as soon as is practicable following receipt. The address research firm will return to Prudential or the Claimant Group Administrator, promptly after receipt of a returned notice, either an updated address or a statement that, following due research, it has not been possible to update the address. Prudential or the Claimant Group administrator will remail notice to any Policyholder for whom the address research firm provides an updated address, so long as the updated address is provided to Prudential or the Claimant Group Administrator at least 30 days before the Settlement Hearing.

(d) *Proof of Mailing.* At or before the Settlement Hearing, Prudential shall file a proof of mailing of the Class Notice and proof of publication of the Publication Notice.

(Oct. 28, 1996 Order ¶ 8.)

In directing Prudential to follow these class notification procedures, the Court stated:

> [N]otice given in the form and manner provided in paragraph 8 of this Order is the best practicable notice and is reasonably calculated, under all the circumstances, to apprise Policyholders of the pendency of this class action and of their right to object to or exclude themselves from the proposed settlement. The Court further finds that such notice is reasonable, that it constitutes due, adequate and sufficient notice to all persons entitled to receive notice, and that it meets the requirements of due process.

(Oct. 28, 1996 Order ¶ 9.)

The Court established December 19, 1996 as the deadline by which policyholders would have to make written requests for exclusion from the Class or be bound by the Settlement once approved in a final judgment. (*Id.* ¶ 12.) Pursuant to its authority under the All–Writs Act, 28 U.S.C. § 1651(a), and the Anti–Injunction Act, 28 U.S.C. 2283, to enter orders "necessary in aid of its jurisdiction," the Court entered a preliminary injunction precluding class members, and those acting on their behalf, from pursuing recovery on claims covered by the Class Settlement outside the context of that Settlement. (*Id.* ¶ 15.)

## B. The Content of Class Notice

The individual notice described in plain English the lawsuit, the settlement, and the options available to class members. The notice included a description of the Proposed Settlement, including the relief available and the Release to be given Prudential, the December 19, 1996 exclusion deadline and the procedure for filing requests for exclusion, the consequences of exclusion, the consequences of remaining in the settlement class, the full text of the Release that would bind class members, and the procedure for obtaining additional information, including the toll-free "800" number established to respond to class member inquiries. (Mar. 17, 1997 Opinion, Findings of Fact ¶ 170.)

In addition to the formal notice, the notice package sent to each class member included a six-page cover letter from Prudential's Chairman, Arthur Ryan ("Ryan Letter"), a twenty-one page question-and-answer brochure ("Question and Answer Brochure"), and a customized statement of eligibility. (*Id.* ¶ 171.)

The publication notice, also written in plain English, included a description of the settlement class, a description of the settlement, a statement of the deadline for filing requests for exclusion, the consequences of remaining in the settlement class, and the procedure for obtaining further information, including a copy of the settlement notice. (*Id.* ¶ 172.)

## C. Dissemination of Class Notice

Pursuant to the October 28 Order, Prudential retained Boston Data Financial Services ("BFDS") to administer the Class Settlement. BFDS supervised the mailing of notices to more than eight million policyholders on or before November 4, 1996.

Over 100,000 Class Notices were returned by the United States Post Office ("USPS") as undeliverable or non-forwardable. BFDS retained an address search firm, Trans Union Corporation ("Trans Union"), to perform address research for the returned Class Notices. For those Class Notices that were returned without a forwarding address, BFDS supplied the name, last known address, policy number, and, if available, the social security number of the policyholder to Trans Union. After Trans Union updated the addresses of approximately 25,000 of these Policyholders, BFDS supervised the remailing of the Class Notices to the updated addresses. On December 20, 1996, the Court ordered that for the class members whose Class Notice was being remailed after December 17, 1996, the exclusion deadline was to be extended from December 19, 1996 to January 6, 1997. (Dec. 20, 1996 Order.)

In addition to the listed publications in the October 28 Order, Prudential published the notice in the largest *circulating newspapers* in each of the fifty states and the District of Columbia. Of the sixty total newspapers utilized by Prudential, the notice appeared in thirteen newspapers on Wednesday, November 20, 1996, forty-one newspapers on Thursday, November 21, 1996, and six newspapers

on Friday, November 22, 1996. (Mar. 17, 1997 Opinion, Findings of Fact ¶ 169.) The Proposed Settlement also received press coverage, including articles put out by wire services carried in many state, local, and trade newspapers. (*Id.* ¶ 173.) Prudential conducted a media outreach program which involved radio and television spots around the country. (Nov. 12, 1997 Hearing at 51.)

## D. Final Order and Judgment Approving the Settlement

On March 17, 1997, as amended on April 14, 1997[3], this Court entered a Final Order and Judgment certifying the Class for settlement purposes and approving the Settlement as "fair, reasonable and adequate as to, and in the best interests of, each of the Settling Parties and the class members whose individual claims are hereby extinguished...." (Mar. 17, 1997 Final Order and Judgment ¶ 3.) The Court found that the "Class Notice was adequate, comprehensive, and timely." (Mar. 17, 1997 Opinion, Conclusions of Law ¶ 109.) The Final Order and Judgment notified class members that the Settlement is:

> binding on, and shall have *res judicata* and claim preclusive effect in all pending and future lawsuits maintained by or on behalf of, the plaintiffs and all other class members, as well as their heirs, executors and administrators, successors and assigns. All claims for compensatory or punitive damages on behalf of class members are hereby extinguished, except as provided for in the Stipulation of Settlement.

(Mar. 17, 1997 Final Order and Judgment ¶ 6.)

As part of the Final Order and Judgment, in aid of the Court's continuing jurisdiction over the enforcement and administration of the Settlement, the Court entered a permanent injunction prohibiting class members, or those acting on their behalf, from pursuing separate lawsuits involving claims covered by the Settlement.[4]

> All class members, and all persons acting on behalf of or in concert or participation with any class member, are hereby permanently enjoined from this day forward from filing, commencing, prosecuting, intervening, or participating in any lawsuit on behalf of any class

---

3. The Court notes that the March 17, 1997 Opinion was amended on April 14, 1997, but the Court will not continue to make separate reference to the amendment date.

4. The Final Order and Judgment provides:

### E. Class Members Chose Relief on Election Forms

After the entry of the Final Order and Judgment, Election Forms were mailed to all class members. The Election Form stated that it should be returned by June 1, 1997. The Election Form also stated that policyholders could choose to participate in either the Alternative Dispute Resolution ("ADR") process, or elect one of the options under Basic Claim Relief ("BCR"). The ADR process requires that a policyholder submit a claim that he or she was misled in connection with the sale or operation of a life insurance policy. ADR relief can be greater than BCR if the evidence supports the claim. Alternatively, policyholders who elect to receive BCR do not have to claim or show any evidence of wrongdoing. BCR, however, is not available to policyholders who chose to participate in the ADR process and received no award of relief.

### F. Class Members Who Seek Relief [5]

Various policyholders who, by virtue of their inclusion within the Class definition and through their failure to opt out by the December 19, 1996 deadline,[6] and have now been deemed class members who are barred by this Court's permanent injunction from

> member in any jurisdiction based on or relating to the facts and circumstances underlying the claims and causes of action in this lawsuit....
>
> (Mar. 17, 1997 Final Order and Judgment ¶ 8.)

**5.** Four of the cases subject to Prudential's motion have been settled:

1. *Rogelio H. Arellano and Maria Carmen Arellano v. The Prudential Ins. Co. of Am., et al.,* Case No. 543133–3, Superior Court of the State of California for the County of Fresno.
2. *Harvey R. Barlow and Martha Barlow v. The Prudential Ins. Co. of America. et al.,* CV 97013110, Circuit Court of Jefferson County, Alabama.
3. *Ross Stuart Bewley, Donna C. Motluko and Union Safe Deposit Bank v. Cigna Financial Advisors, et al.,* Marin County Superior Court No. 170542, Superior Court of the State of California for the County of Marin.
4. *Thomas and Diane Smith v. Gerald Rousseau and The Prudential Ins. Co. of Am.,* No. 9633CV0809, Trial Court of the Commonwealth of Massachusetts, District Court Department, New Bedford Division.

**6.** Policyholder Antoinette Adamakis is the only policyholder who submitted a request to opt out

pursuing their claims against Prudential in other forums and have requested that the Court grant them extraordinary relief from the Final Order, and permission for an extension of time to opt out.[7]

### 1. Antoinette Noonan Adamakis [8]

Antoinette Adamakis ("Adamakis"), formerly Antoinette Noonan, is a plaintiff in an action entitled *Pompa Lopez v. Prudential,* which is pending in the Superior Court of Arizona, County of Santa Cruz. Class Notice was mailed to Adamakis on or before November 4, 1996. BFDS received a timely notice of exclusion from Adamakis postmarked December 17, 1996. On June 17, 1997, BFDS received an election form from Adamakis in which she opted back into the Class and elected to pursue relief through the ADR process in the Class Action Settlement.

### 2. Donald Bennett

Donald Bennett ("Bennett") is a plaintiff in an action entitled *Bennett v. Prudential,* which was transferred by the MDL Panel to this Court from the United States District Court for the Middle District of Florida. Class Notice was mailed to Bennett on or

prior to the December 19, 1996 deadline. Adamakis later opted back into the Class and elected to pursue relief through the ADR process. Adamakis, however, has not dismissed her action.

**7.** Pursuant to 28 U.S.C. § 1407, all actions involving common questions of fact have been and continue to be transferred to this Court by the Judicial Panel on Multidistrict Litigation ("MDL Panel") for consolidated pretrial proceedings. Pursuant to such transfer, this Court has complete jurisdiction for pretrial purposes and has authority to settle all pretrial motions including dispositive motions. *See, e.g., In re "Agent Orange" Prod. Liab. Litig.,* 597 F.Supp. 740 (E.D.N.Y.1984), *aff'd,* 818 F.2d 145 (2d Cir. 1987). Therefore, this Court has the authority to dismiss or to enjoin class member actions.

**8.** Prudential submitted the affidavit of William J. Hegarty, Jr. ("Hegarty Affidavit"), an official at BFDS in support of the notice mailing procedures. Griffis, Meyer and Flauto submitted a Motion to Strike the Affidavit of William J. Hegarty, Jr. The Court orally denied the motion on November 12, 1997.

before November 4, 1996. BFDS did not receive a notice of exclusion from Bennett. Bennett's counsel does not contest that Bennett failed to opt out of the Class. He contends, however, that Bennett "was never notified by Prudential that he potentially would be a member of the class action settlement" and that Bennett's policy is not covered by the Court's ruling. On May 30, 1997, BFDS received an election form, though Bennett did not check a box on the form to indicate his selection of one of the BCR remedies or ADR.

### 3. William Bowen

William Bowen ("Bowen") is a plaintiff in an action entitled *Bowen v. Prudential*, which is pending in the Superior Court of New Jersey, Law Division, Monmouth County. Class Notice was mailed to Bowen on or ·before November 4, 1996. BFDS received a notice of exclusion from Bowen dated January 13, 1997 and postmarked January 24, 1997. Counsel for Bowen contends that a timely exclusion request was sent by his office but proffers no supporting documentation. Counsel for Bowen also claims that Bowen effectively opted out of the class settlement by filing his lawsuit prior to December 19, 1996.

### 4. Ashley Buckman

Ashley Buckman, Heather Buckman and Ashley Buckman as Parent, Natural Guardian, and Next Friend of Holly Buckman, a Minor, are plaintiffs in an action entitled *Buckman v. Prudential*, which is pending in the United States District Court for the Southern District of Ohio, Western Division, Dayton. Class Notice was mailed to Ashley Buckman on or before November 4, 1996. BFDS did not receive a notice of exclusion from Ashley Buckman. On January 21, 1997, Prudential moved for a more definite statement in the *Buckman* action, requesting that the Buckmans be required to replead to the extent they intended to pursue claims other than those relating to the Prudential policy covered by the Settlement. The Buckmans opposed the motion claiming that Ashley Buckman could not be treated as a class member. Ashley Buckman stated that she

believed that she did not receive the Class Notice until "well after Christmas" of 1996. The Buckmans argued that Ashley Buckman's policy should be "automatically opted-out of the class," because the *Buckman* action was filed before the Class Settlement. The Buckmans maintain that Prudential was required to give their attorney Class Notice and, not having done so, should be estopped from seeking to bind Ashley Buckman to the Settlement.

### 5. Moises Dabdoub

Moises Dabdoub ("Dabdoub") is a plaintiff in an action entitled *Lopez v. Prudential*, which is pending in the Superior Court of the State of Arizona, County of Santa Cruz. Class Notice was mailed to Dabdoub on or before November 4, 1996. The Class Notice was returned by the USPS as non-forwardable mail on November 21, 1996. The address research firm retained by BFDS was unable to locate a new address. BFDS did not receive a notice of exclusion from Dabdoub. Counsel for the *Lopez* plaintiffs sent a letter to counsel for Prudential on June 10, 1997, stating that Dabdoub "chose not to opt out of the class action settlement."

### 6. Olin Davis

Olin Davis ("Davis") is a plaintiff in an action entitled *Davis v. Prudential*, which is pending in the Circuit Court for Polk County, Florida. Class notice was mailed to Davis on or before November 4, 1996. BFDS received a notice of exclusion dated January 29, 1997. BFDS received election forms dated May 22, 1997 on which Davis chose to withdraw her untimely exclusion request from the class and to pursue relief through the ADR process in the Class Action Settlement.

### 7. Tatiana Dear

Tatiana Dear is a plaintiff in an action entitled *Dear v. Prudential*, which is pending in the Superior Court of New Jersey, Law Division, Warren County. Tatiana Dear brought an action based on a policy which was held by her late husband, Charles W. Dear. Class Notice was mailed to Charles Dear on or before November 4, 1996. Charles Dear died on November 18, 1996.

BFDS did not receive a notice of exclusion. Counsel for Tatiana Dear states that he believes there was no exclusion request for the policy but contends that the claims raised in her lawsuit are not covered by the Settlement.

### 8. Salvatore Flauto

Salvatore Flauto ("Flauto") filed a motion with this Court on July 16, 1997, for relief from the Final Order and Judgment and an extension of time to opt out of the Class. Class Notice was sent to Flauto on or before November 4, 1996, and was not returned by the USPS. BFDS did not receive a notice of exclusion from Flauto. Flauto owns or owned two policies. On June 2, 1997, BFDS received an election form for one policy, though Flauto did not check a box on the form to indicate whether he selected one of the BCR remedies or ADR. BFDS telephoned Flauto on June 17, 1997, and Flauto chose to pursue relief through the ADR process. BFDS received an election form for the other policy on June 3, 1997, on which Flauto elected to pursue relief through the ADR process in the Class Action Settlement.

### 9. Ernesto Gamez, Jr.

Ernesto Gamez, Jr. ("Gamez") is a plaintiff in an action entitled *Gamez v. Prudential,* which was transferred by the MDL Panel to this Court from the United States District Court for the Southern District of Texas. Class Notice was mailed to Gamez on or before November 4, 1996. BFDS did not receive a notice of exclusion from Gamez. On April 21, 1997, BFDS received an election form on which Gamez elected to pursue relief through the ADR process in the Class Action Settlement.

### 10. J. Camille Tucker Gray and Gregory Gray

By letters to this Court dated September 24, 1997 and October 30, 1997, J. Camille Tucker Gray has sought leave for her family to opt out of the Settlement. Class Notices were mailed to J. Camille Tucker Gray for nine policies and to Gregory Gray for three policies on or before November 4, 1996. Class Notice for one of J. Camille Tucker Gray's policies was returned by the USPS and was remailed on December 1, 1996. BFDS did not receive a notice of exclusion from either J. Camille Tucker Gray or Gregory Gray. On April 23, 1997, BFDS received Election Forms on which J. Camille Tucker Gray and Gregory W. Gray elected to pursue relief through the ADR process in the Class Action Settlement.

### 11. James Griffis

James Griffis ("Griffis") filed a motion with this Court on July 16, 1997, for relief from the Final Order and Judgment and an extension of time to opt out of the Class. Class Notice was sent to Griffis on or before November 4, 1996 and was not returned by the USPS. BFDS did not receive a notice of exclusion from James Griffis. On June 3, 1997, BFDS received an election form on which Griffis elected to pursue relief through the ADR process in the Class Action Settlement.

### 12. Linda and Robert Hanan

Linda and Robert Hanan ("the Hanans") are plaintiffs in an action entitled *Lopez v. Prudential,* which is pending in the Superior Court of the State of Arizona, County of Santa Cruz. Class Notice was mailed to the Hanans on or before November 4, 1996. BFDS did not receive a notice of exclusion from the Hanans. On May 19, 1997, BFDS received an election form on which the Hanans had elected to pursue relief through the ADR process in the Class Action Settlement.

### 13. Kenny Harper, Daniel Harper and Russell Harper

Class Notice was mailed to Kenny Harper for two policies and to Russell Harper for one policy on or before November 4, 1996. Daniel Harper is the insured under one of Kenny Harper's policies. The Notice to Russell Harper was returned by the USPS as non-forwardable mail. The address research firm retained by BFDS was unable to locate a new address. BFDS did not receive a notice of exclusion from either Kenny Harper or Russell Harper. On April 21, 1997, BFDS received Election Forms on which Kenny Harper and Russell Harper elected to pursue

relief through the ADR process in the Class Action Settlement.

### 14. Robert Kilgallon

Mr. Kilgallon ("Kilgallon") is a plaintiff in an action entitled *Kilgallon v. Prudential,* which was conditionally transferred by the MDL Panel to this Court from the United States District Court for the Western District of Pennsylvania. Class Notice was mailed to Kilgallon on or before November 4, 1996. BFDS did not receive a notice of exclusion from Kilgallon. On May 14, 1997, Prudential filed a Notice of Entry of Permanent Injunction in Pennsylvania federal court apprising the court that, as a class member, Kilgallon was permanently enjoined by this Court's Final Order and Judgment from litigating claims against Prudential. On May 28, 1997, Kilgallon filed an answer to the Notice of Entry claiming that he had no knowledge and had received no notice of the class action and, therefore, could not opt out. On June 4, 1997, BFDS received an election form on which Kilgallon elected to pursue relief through the ADR process in the Class Action Settlement.

### 15. John Marrs

John Marrs ("Marrs") is a plaintiff in an action entitled *Marrs v. Prudential,* which is pending in the District Court for the 74th Judicial District, McLennan County, Texas. Class Notice was mailed to Marrs on or before November 4, 1996. BFDS did not receive a notice of exclusion from Marrs. On May 5, 1997, BFDS received an election form on which Marrs elected to pursue relief through the ADR process in the Class Action Settlement.

### 16. Lola Meyer

Lola Meyer ("Meyer") filed a motion with this Court on July 16, 1997, for relief from the Final Order and Judgment and an extension of time to opt out of the Class. Class Notice was sent to Meyer for two policies on or before November 4, 1996. Class Notice for one policy was returned by the USPS. Meyer's name, last known address, and policy number was provided to an address research firm, but the address research firm

was unable to update the address. On January 20, 1997, Meyer contacted BFDS and provided her correct address. On January 23, 1997, Class Notices for both policies were sent to the address provided by Meyer. BFDS did not receive a notice of exclusion from Meyer. BFDS received an election form on June 2, 1997 for one policy and on June 4, 1997 for the other policy on which Meyer elected to pursue relief through the ADR process in the Class Action Settlement.

### 17. Scott Naliboff

Scott Naliboff ("Naliboff") filed a motion with this Court on September 18, 1997, for relief from the Final Order and Judgment and an extension of time to opt out of the Class. Class Notice was mailed to Scott Naliboff on or before November 4, 1996. BFDS did not receive a notice of exclusion from Naliboff. On May 20, 1997, BFDS received an Election Form on which Naliboff elected to pursue relief through the ADR process in the Class Action Settlement.

### 18. Cecil and Lorraine Ortega

Cecil and Lorraine Ortega ("the Ortegas") are plaintiffs in an action entitled *Ortega v. Prudential,* which was transferred by the MDL Panel to this Court from the United States District Court for the District of New Mexico. Class Notices for two policies were sent to the Ortegas on or before November 4, 1996. BFDS did not receive a notice of exclusion from the Ortegas. The Ortegas contend that they are not class members because the Class Notice "was deficient and premature" and because "by filing their lawsuit [prior to the Court's March 17, 1997 Final Order and Judgment]," they effectively opted out of the class. Furthermore, the Ortegas claim that they are not bound by the Court's October 28, 1996 Order.

### 19. Michael Jay Perlman

Michael Jay Perlman ("Perlman") is a plaintiff in an action entitled *Perlman v. Prudential,* which was filed in the Circuit Court of the 11th Judicial Circuit, Dade County, Florida on December 7, 1993. Sherry Spalding and Spalding Associates, Inc. ("Spalding") were additional named defen-

dants. On August 4, 1995, the trial court granted Spalding's motion for a directed verdict. Subsequent to oral argument on March 20, 1996, the Third District Court of Appeals, on January 22, 1997, reversed the order of the trial court. Spalding sought review of the Third District Court of Appeal's decision, and on February 20, 1997, filed a Notice to Invoke Discretionary Jurisdiction. On June 23, 1997, the Florida Supreme Court declined to exercise jurisdiction over the case. Class Notice was mailed to Perlman on or before November 4, 1996. The Class Notice was returned by the USPS as non-forwardable mail on November 15, 1996. The address research firm retained by BFDS was unable to locate a new address. BFDS did not receive a notice of exclusion from Perlman. At Perlman's request, Prudential extended the election period for Perlman to June 30, 1997. On June 30, 1997, counsel for Perlman wrote BFDS that Perlman intended to proceed with his lawsuit but "in the event that Mr. Perlman is unable to obtain the relief being sought from the March 17, 1997 Final Order and Judgment as amended on April 14, 1997 in order to proceed with that lawsuit, he is electing to participate in the Remediation Plan." On October 18, 1997, BFDS recorded the notice of Perlman's intention.

### 20. Eleanor Reed, Susan Reed and Steven Reed

Class Notices were mailed to Eleanor Reed, Susan Reed and Steven Reed ("the Reeds") for three policies on or before November 4, 1996. BFDS did not receive a notice of exclusion until May 29, 1997. In the May 29 letter, the Reeds stated their intention to opt out of the settlement but noted that "[i]f for some reason we are barred from pursuing the matter in a separate action, we select the ADR process." On June 28, 1997, the Reeds wrote to this Court, copying counsel for Prudential. The letter stated that the Reeds wished to opt out and that the Reeds had never received "information and election forms regarding their right

to opt out of the class." This Court replied to the Reeds on July 7, 1997, copying counsel for Prudential, suggesting that the Reeds file a formal motion. On October 2, 1997 the Reeds filed a motion for an extension of time to opt out of the Class Settlement.[9]

### 21. Gerald Reed

Class Notice was mailed to Gerald Reed on or before November 4, 1996. Gerald Reed did not request exclusion until May 30, 1997. His counsel's letter to the Clerk of this Court stated: "Mr. Reed has elected to pursue any claim that he might have against Prudential ... as a result of misleading sales practices or otherwise in a court of competent jurisdiction in an appropriate venue of his choosing." In a June 25, 1997 letter, Mr. Reed's counsel stated that "Mr. Reed is not precluded from pursuing any claims he has against Prudential."

### 22. Willie Ruffins

Willie Ruffins ("Ruffins") is a plaintiff in an action entitled *Ruffins v. Prudential*, which is pending in the Superior Court of New Jersey, Law Division, Monmouth County. Class Notice was mailed to Ruffins on or before November 4, 1996. BFDS did not receive a notice of exclusion from Ruffins. On April 15, 1997, BFDS received an election form in which Ruffins elected the Enhanced Value Annuity remedy under the BCR portion of the Settlement.

### 23. Marcel Rutledge

Marcel Rutledge ("Rutledge") is a plaintiff in an action entitled *Rutledge v. Prudential*, which is pending in the Superior Court of New Jersey, Law Division, Gloucester County. Class Notice was mailed to Rutledge on or before November 4, 1996. BFDS did not receive a notice of exclusion from Rutledge.

### 24. Lee W. Trammel

Lee W. Trammel ("Trammel") is a plaintiff in an action entitled *Mallard v. Prudential*,

---

9. The Reeds also filed a Complaint in this matter in Sacramento County Superior Court on September 2, 1997. On October 30, 1997, pursuant to this Court's October 28, 1996 Order, this Court enjoined the Reeds from pursuing their claim pending the decision of this Court as to whether the Reeds will be permitted to opt out of the class settlement.

which is pending in the Circuit Court of Montgomery County, Alabama. Class Notice was mailed to Trammel on or before November 4, 1996. BFDS did not receive a notice of exclusion from Trammel. Trammel's counsel, Emond & Vines, has advised Prudential that Trammel did not opt out of the Class Action Settlement and that Emond & Vines no longer represents Trammel.

## DISCUSSION

### A. The Court Has Both Subject Matter and Personal Jurisdiction Over Class Members and Their Actions

■ This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337, and has supplemental jurisdiction under 28 U.S.C. § 1367. Because this Court is the transferee district for the multidistrict litigation, venue is proper under 28 U.S.C. § 1407. The Court has ancillary jurisdiction to enforce the Settlement and the Final Order and Judgment because the Court explicitly retained "exclusive jurisdiction as to all matters relating to administration, consummation, enforcement and interpretation of the Stipulation of Settlement and of this Final Order and Judgment, and for any other necessary purpose." (Mar. 17, 1997 Final Order and Judgement ¶ 10.); *see also Kokkonen v. Guardian Life Ins. Co.,* 511 U.S. 375, 379, 114 S.Ct. 1673, 1676, 128 L.Ed.2d 391 (1994).

■ This Court also has personal jurisdiction over the class members. When this Court approved the Settlement in this case, the Court found that the notice procedure comported with due process and Federal Rule of Civil Procedure 23. (Mar. 17, 1997 Opinion, Conclusions of Law ¶ 139.) As long as Rule 23 and due process requirements have been satisfied, "a court may bind an absent plaintiff class member to a class action damages judgment, despite the absentee's lack of minimum contacts with the forum, without abrogating minimal due process protection." *Carlough v. Amchem Prods.,* 10 F.3d 189, 199 (3d Cir.1993) (citing *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 811–12, 105 S.Ct. 2965, 2974–75, 86 L.Ed.2d 628 (1985)). As part of the Final Order and Judgment, this Court entered a permanent injunction prohibiting class members, or those acting on their behalf, from pursuing separate lawsuits involving claims covered by the Settlement. (Mar. 17, 1997 Final Order and Judgment, ¶ 8.) Thus, this Court has personal jurisdiction to enjoin class members, or those acting on their behalf, from violating the Court's permanent injunction. *See In re Bolar Pharmaceutical Co., Inc., Generic Drug Consumer Litig.,* MDL No. 849, 1994 WL 326522, at *2 (E.D.Pa. July 5, 1994) (enforcing permanent injunction against violating class members). While this Court has the power to enjoin cases pending in other jurisdictions, the Court also has the power to dismiss actions either brought before the Court or, pursuant to 28 U.S.C. § 1407, transferred to the Court by the MDL Panel for the consolidation of pretrial proceedings. 28 U.S.C. § 1407; *see e.g., In re Trump Casino Secs. Litig.,* 7 F.3d 357, 367–68 (3d Cir.1993).

■ The Ortegas insist that the Court lacks subject matter jurisdiction over their action. The Ortegas claim that they are not bound by the Court's October 28, 1996 Order because, even though they did not expressly opt out of the class, "the notice informing them of their right to opt out also informed them that the class at that time was only conditionally certified, meaning, of course that it was subject to change." The Ortegas' argument fails because they cite no authority and the Court is not aware of any, to support their position that Class Notice of a class conditionally certified for settlement purposes is somehow not binding on class members.

■ The Ortegas mistakenly assert that a Remand Order entered by Judge Campos in the United States District Court for the District of New Mexico is valid. The MDL Panel transferred the Ortegas' case from the United States District Court for the District of New Mexico to this Court with a transfer order effective August 18, 1997. Relying on Judge Campos's Memorandum Opinion and Order from the New Mexico District Court which denied *res judicata* as a basis for federal jurisdiction, the Ortegas claim that this Court does not have subject matter jur-

isdiction. Judge Campos's Remand Order, filed August 19, 1997, is a nullity, however, because Judge Campos no longer had jurisdiction over the Ortegas' case as of August 18, 1997, the filing date of the MDL Panel's order to the transferee district. Thus, this Court has jurisdiction over the Ortegas' case and can properly consider Prudential's request to dismiss their action.[10]

■ Bowen contends that this Court no longer has jurisdiction over his action because the Court remanded Bowen's case to the Superior Court of New Jersey on June 5, 1997. Notwithstanding the Remand Order, the Court in the Final Order and Judgment explicitly retained jurisdiction to enjoin Bowen's suit.[11] Therefore, contrary to Bowen's assertion, Prudential was not required to file a motion for reconsideration and properly moved to enjoin Bowen's action.

### B. Notice to the Class Satisfied Rule 23 and Due Process

■ The paramount argument advanced by the movants as to why this Court should permit them an extension of time to opt out of the Class Settlement is that because they did not receive individual notice, the mode of dissemination of notice violated due process and the requirements of Rule 23. Movants argue that they are entitled to actual notice and that constructive notice cannot be constitutionally imputed to them. The Court disagrees.

The Court conditionally certified this class action under Rule 23(b)(3). Rule 23 imposes two separate mandatory notice requirements in an action maintained under section (b)(3),

sections (c)(2) and (e). Because the judgment in a class action maintained under Rule 23(b)(3) binds all members unless they expressly opt out, Rule 23(c)(2) requires that class members be informed of the existence of the action.[12] Rule 23(c)(2) affords class members the right to opt out of a Rule 23(b)(3) class and requires that the parties send a notice to inform class members of this option. *See* Fed.R.Civ.P. 23(c)(2). Rule 23(c)(2) also requires that the notice indicate that the judgment will bind all class members who do not opt out and that any member who does not opt out may appear through counsel. *See id.* Rule 23(c)(2) notice must be "the best practicable notice under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed.R.Civ.P. 23(c)(2); *Zimmer Paper Prods., Inc. v. Berger & Montague, P.C.,* 758 F.2d 86, 90 (3d Cir.), *cert. denied,* 474 U.S. 902, 106 S.Ct. 228, 88 L.Ed.2d 227 (1985).

■ When the named parties of a class action reach a proposed settlement, Rule 23(e) requires that the class members be notified of the terms of the proposed settlement. Notice of a proposed settlement under Rule 23(e) must inform class members (1) of the nature of the pending litigation, (2) of the settlement's general terms, (3) that complete information is available from the court files, and (4) that any class member may appear and be heard at the Fairness Hearing. *See* Herbert Newberg & Alba Conte, 2 *Newberg on Class Actions* § 8.32, at 8–103 (3d ed. 1992) *["Newberg"].*

---

10. The Ortegas argue that because Judge Campos found that *res judicata* was not a basis for federal jurisdiction, the Court lacks jurisdiction, pursuant to the All–Writs Act, 28 U.S.C. § 1651(a), and the Anti–Injunction Act, 28 U.S.C. § 2283, to enjoin the Ortegas' action in New Mexico. Because this argument is based on the premise of a valid Remand Order, and the Court has found that Judge Campos's Remand Order is a nullity, the Court need not address this argument.

11. As discussed above, the Court has ancillary jurisdiction to enforce the Settlement and the Final Order and Judgment.

12. Rule 23(c)(2) provides:

> In any class action maintained under subdivision (b)(3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice shall advise each member that (A) the court will exclude the member from the class if the member so requests by a specified date; (B) the judgment, whether favorable or not, will include all members who do not request exclusion; and (C) any member who does not request exclusion may, if the member desires, enter an appearance through counsel.
>
> Fed. R. Civ. P. 23(c)(2).

To assess the adequacy of the notice, the Court must consider both the notice's mode of dissemination and its content. The nature and extent of Rule 23(e) class notice of a proposed settlement are left to the discretion of the trial court judge. *See In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 145, 168 (2d Cir.1987) ("Rule 23, of course accords considerable discretion to a district court in fashioning notice to a class."), *cert. denied*, 484 U.S. 1004, 108 S.Ct. 695, 98 L.Ed.2d 648 (1988); *Zimmer Paper Prods., Inc.*, 758 F.2d at 90 (observing that Rule 23(e) commits the form of notice to the court's discretion); *Walsh v. Great Atl. & Pac. Tea Co.*, 96 F.R.D. 632, 642–43 (D.N.J.) (same) [*"Walsh v. Great Atl. & Pac."*], *aff'd*, 726 F.2d 956, 962 (3d Cir.1983) (same); *see also Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 120–21 (8th Cir.) ("[T]he mechanics of the notice process are left to the discretion of the court subject only to the broad reasonableness standards imposed by due process."), *cert. denied*, 423 U.S. 864, 96 S.Ct. 124, 46 L.Ed.2d 93 (1975).

Rule 23(e) notice is designed to be only "a summary of the litigation and the settlement [and] it is crucial to apprise class members of the right and opportunity to inspect the complete settlement documents, papers, and pleadings filed in the litigation." *See 2 Newberg* § 8.32, at 8–109; *see also Grunin*, 513 F.2d at 122 ("Class members are not expected to rely upon the notices as a complete source of settlement information"). The notice need not be unduly specific. *See 2 Newberg* § 11.53, at 11–130 (citing *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d at 170 (holding that settlement notice that failed to detail a distribution plan was not inadequate)). The notice need not include the entire settlement agreement. *See Grunin*, 513 F.2d at 122; *Carlough v. Amchem Prods.*, 158 F.R.D. 314, 332 (E.D.Pa.1993). The notice of the Proposed Settlement, to satisfy both Rule 23(e) requirements and constitutional due process protections, need only be reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950) ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them the opportunity to present their objections."); *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1177 (9th Cir.1977) ("Notice in a class suit must present a fair recital of the subject matter and proposed terms and [give] an opportunity to be heard to all class members."). Thus, due process does not require actual notice, but rather a good faith effort to provide actual notice. *In re Cherry's Petition to Intervene*, 164 F.R.D. 630, 636 (E.D.Mich.1996).

Courts have consistently recognized that due process does not require that every class member receive actual notice so long as the court reasonably selected a means likely to apprise interested parties. *See In re Prudential Secs. Inc. Ltd. Partnerships Litig.*, 164 F.R.D. 362, 368 (S.D.N.Y.), *aff'd without opinion*, 107 F.3d 4 (2d Cir.1996); *see also Silber v. Mabon*, 18 F.3d 1449, 1453–54 (9th Cir.1994) (concluding that the standard for class notice is "best practicable", rather than "actually received" notice); *Weigner v. The City of New York*, 852 F.2d 646, 649 (2d Cir.1988) ("[t]he proper inquiry is whether [class counsel] acted reasonably in selecting means likely to inform persons affected, not whether each [class member] actually received notice"), *cert. denied*, 488 U.S. 1005, 109 S.Ct. 785, 102 L.Ed.2d 777 (1989); *In re VMS Ltd. Partnership Sec. Litig.*, No. 90 C 2412, 1995 WL 355722, at *1–2 (N.D.Ill. June 12, 1995) ("Due process and Rule 23 merely require good faith compliance with the presumptively valid notice procedures ordered by the court."); *Trist v. First Fed. Sav. & Loan Ass'n of Chester*, 89 F.R.D. 1, 2 (E.D.Pa.1980) ("Mullane has never been interpreted to require the sort of actual notice demanded by the defendants, but rather only notice reasonably calculated to apprise interested parties of the nature of the settlement and afford them an opportunity to object."); *McCubbrey v. Boise Cascade Home & Land Corp.*, 71 F.R.D. 62, 73 (N.D.Cal.1976) ("In

declining to impose a requirement of personal service on absentees and holding the less expensive postal service adequate to satisfy constitutional requirements, *Mullane* dictates only 'best efforts'—not a guarantee of success.").

■■■ Similarly, Rule 23 does not require the parties to exhaust every conceivable method of identifying the individual class members. *See Weinberger v. Kendrick*, 698 F.2d 61, 71 (2d Cir.1982) (rejecting the contention that the mailing of individual notice to the last known address of all class members was inadequate), *cert. denied*, 464 U.S. 818, 104 S.Ct. 77, 78 L.Ed.2d 89 (1983); *Carlough v. Amchem Prod.*, 158 F.R.D. at 325 ("Receipt of actual notice by all class members is required neither by Rule 23 nor the Constitution.... [T]he fact that notice to some class members must be given by publication is not necessarily fatal. In all cases the Court should strike an appropriate balance between protecting class members and making Rule 23 workable.") (citation omitted). Indeed, Rule 23 does not even require that all notices be mailed out. *See Trist*, 89 F.R.D. at 3 (approving notice procedure despite that 37 class members failed to receive notice because due to a clerical error, none were sent).

Prudential complied with this Court's October 28, 1996 Order. The Court found that the "Class Notice was adequate, comprehensive, and timely." (Mar. 17, 1997 Opinion, Conclusions of Law ¶ 109.) The Court declared that "the comprehensive notice program in this case far exceeded the requirements of Rule 23 and due process" and noted that "[d]issemination of the Class Notice in this case has been extraordinary." (*Id.* ¶¶ 110, 114.) The Court determined that:

> the combination of individual and publication notice in this action was the most effective and best notice practicable under all circumstances and constituted due, adequate, and reasonable notice to all class members, satisfying the requirements of

due process, Federal Rule of Civil Procedure 23, and the Rules of this Court. The Court finds also that the Class Notice, the Summary Notice, the Election Form, the ADR Claim Form, and the post-settlement methodology set forth in the Stipulation of Settlement are reasonably calculated, under all the circumstances, to apprise class members of their rights pursuant to the settlement and that those materials satisfy the requirements of due process, Federal Rule of Civil Procedure 23, and the Rules of this Court.

(*Id.* ¶ 139.)

The Court also found that the content of the Class Notice satisfied all of the necessary requirements. The Class Notice indicated (1) the nature of the pending litigation, (2) that any class member could opt out, (3) that any class member who declined to opt out would be bound by the final judgment, (4) the general terms of the settlement, (5) that complete information was available in Court files, and (6) that any class member could be heard at the specified date, time, and place. (*Id.* ¶ 115.) [13]

■■■ For those whose names and addresses cannot be determined by reasonable efforts, notice by publication will suffice under Rule 23(c)(2) and under the due process clause. *See Mullane*, 339 U.S. at 317–18, 70 S.Ct. at 658–59. These class members will be bound by the final judgment in a class action despite the lack of individual notice. *See Carlough v. Amchem Prod., Inc.*, 158 F.R.D. at 325. In the instant case, the notice plan provided for very substantial efforts to determine the names and addresses of class members. As described above, these efforts included a mailing to more than eight million policyholders and a follow-up mailing for returned mail. Moreover, the publication campaign in newspapers nationwide was designed not only to provide notice by itself but also to result in further individual notice.

Notably, Prudential's dissemination of notice exceeds the dissemination of notice in

---

**13.** On January 6, 1997, this Court ordered that the Settlement Hearing be moved form January 21, 1997 to February 24, 1997. The Class Notice provided that the date of the hearing could be changed without further notice and that class members should verify the date of the hearing. Nevertheless, this Court ordered additional notice of the new hearing date to all class members who had indicated a desire to participate in the Fairness Hearing.

other similar class actions found by courts to meet the requirements of Rule 23(c)(2). *See, e.g., Silber,* 18 F.3d at 1451–52 (notice by first class mail to all "identified class members" with published notice in *The Wall Street Journal and The New York Times* ); *Weinberger v. Kendrick,* 698 F.2d at 61, 69–71 (mailed notice supplemented with published notice in only one newspaper); *In re Prudential Secs. Inc. Ltd. Partnerships Litig.,* 164 F.R.D. at 367 (mailed notice to class members identifiable with "reasonable effort" with published notice twice in the national editions of *The Wall Street Journal, The New York Times,* and *U.S.A. Today* ); *In re Four Seasons Secs. Laws Litig.,* 58 F.R.D. 19, 32 (W.D.Okla.1972) (mailed notice to last address supplemented by publication once in the national edition of *The Wall Street Journal* ).

The movants argue that absent the receipt of individual notice and an opportunity to be heard, the affected policyholders have been deprived of due process. In support of their position, the movants mistakenly rely on *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), *Schroeder v. City of New York,* 371 U.S. 208, 83 S.Ct. 279, 9 L.Ed.2d 255 (1962), and *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985). Contrary to the contentions of the movants, none of these cases mandate the receipt of individual notice by all class members in this case. Significantly, unlike the notice in the instant case, in *Eisen, Mullane,* and *Schroeder,* there was no individual notice; at issue was whether due process was satisfied by publication notice where no attempt at individual notice was made.

In *Eisen,* the Supreme Court declared that the mandate of Rule 23(c)(2) requiring individual notice to those persons who can be identified through reasonable effort was "unmistakable" and was not a discretionary consideration. 417 U.S. at 173, 176, 94 S.Ct. at 2150, 2151–52. The Supreme Court held that notwithstanding the named plaintiff's objection that the expense of individual notice would end the case as a class action, individu-

al notice was to be sent to "all class members whose names and addresses may be ascertained through reasonable effort." *Id.* at 173, 94 S.Ct. at 2150. The Court interprets this holding to require that the method of dissemination of class notice must *include* individual notice rather than *require receipt* of individual notice. *See id.* at 173, 176, 94 S.Ct. at 2150, 2151–52. Similarly, *Mullane* dictates only that "within the limits of practicability notice must be such as is reasonably calculated to reach interested parties." 339 U.S. at 318, 70 S.Ct. at 659.

In *Schroeder,* where no attempt at individual notice had been made to apprise a property owner of condemnation proceedings, the Supreme Court determined that due process warranted more notice than publication and posted notice and concluded that due process could have been satisfied by the "mailing of a single letter." 371 U.S. at 212, 83 S.Ct. at 282. Instructively, the Supreme Court did not require that the letter be received.

Finally, in *Shutts,* while there was individual notice, petitioners argued that due process required individual notice with a right to opt in rather than the right to opt out that had been included in the notice. 472 U.S. at 806, 105 S.Ct. at 2971–72. While the Supreme Court reasoned that a "plaintiff must receive notice plus an opportunity to be heard and participate in the litigation," the Court concluded that "[w]e think that the procedure ... where a fully descriptive notice is sent by first-class mail to each class member, with an explanation of the right to 'opt out,' satisfies due process." *Id.* at 812, 105 S.Ct. at 2975.

In approving the Settlement, the Court stated:

> Neither Rule 23 nor the requirements of due process require actual notice to each and every possible class member. *See Mullane,* 339 U.S. at 317, 70 S.Ct. at 658–59; *In re Domestic Air Transp. Antitrust Litig.,* 141 F.R.D. 534, 551 (N.D.Ga.1992). Many class members could not be located through reasonable effort. Supplementing individual notice with publication notice represents an appropriate balance between protecting class members and making class actions workable. *See, e.g., Weinberger v.*

*Kendrick,* 698 F.2d at 61, 69–71 (mailed notice supplemented with published notice in only one newspaper).

(Mar. 17, 1997 Opinion, Conclusions of Law ¶ 114 n. 52.) The Court is unpersuaded that *Eisen, Mullane, Schroeder,* and *Shutts* countenance a different result. Contrary to the movants' contentions, these cases confirm this Court's finding that Prudential's notice comported with due process and Rule 23.

▪ In addition, the Court rejects the suggestion of some movants that the Court should consider the number of late opt-out requests to determine the adequacy of the mode of dissemination of notice. Courts routinely have approved notice procedures without particular regard to the number of individuals who claimed they did not receive notice. *See, e.g., Grunin,* 513 F.2d at 121 (approving notice procedure where one third of class members not reached by mailing and no publication); *Trist,* 89 F.R.D. at 2 (refusing to permit 3,161 of 25,000 class members whose notices were returned undelivered by the USPS to opt out).

In sum, the fact that notice did not reach some class members, while unfortunate, does not alter the fact that such efforts constituted the best notice practicable. In spite of the occasional dead letter, the mode of dissemination of notice in this case was reasonably calculated to provide notice to the identifiable class members. That some class members may not have received notice evidences only that the extensive notice system was not perfect. Due process when viewed through the lens of objectivity does not require perfection.

## C. Prudential Is Not Equitably or Judicially Estopped From Enforcing The Court's Final Order And Judgment Against Perlman Because Perlman Fails to Prove The Requisite Elements

▪ Prudential filed a Notice of Permanent Injunction in Perlman's Florida state court action on May 28, 1997. Perlman argues that Prudential should be judicially or equitably estopped from relying on the March 17, 1997 Final Order and Judgment to avoid litigating Perlman's Florida state court case. Perlman contends that he did not receive Class Notice and that he detrimentally relied on (1) Prudential's and Spalding's (a Prudential agent and co-defendant) conduct in continuing to prosecute the appeal despite that the case was preliminarily enjoined by this Court's October 28, 1996 Order, and (2) a conversation with a Prudential representative in which the representative allegedly told Perlman that he did not have to do anything to opt out of the class action and that his Florida lawsuit was not affected by the class action. These arguments are without merit.

▪ As the party claiming equitable estoppel, Perlman has the burden of proof and must prove: (1) a misrepresentation by another party; (2) which he reasonably relied upon; (3) to his detriment. *See U.S. v. Asmar,* 827 F.2d 907, 912 (3d Cir.1987). Perlman claims that Prudential should have notified him of the opt-out requirement prior to the December 19, 1996 deadline and of the Permanent Injunction prior to the May 28, 1997 file date. As discussed above, Class Notice comported with due process and Rule 23; the fact that Perlman may not have received notice does not vitiate the Class Notice. Therefore, lack of notice cannot constitute a misrepresentation.

Perlman argues that in response to correspondence he received in 1996, he called a 1–800 number and spoke with a Prudential representative. Because Class Notice contained a 1–800 number, Perlman's argument belies his claim that he did not receive Class Notice. Perlman contends that the representative did not advise him that he had to do anything to opt out of the class action, but absent a date more specific than the year 1996, the Court cannot determine whether statements by the Prudential representative constituted misrepresentations.

Furthermore, because Spalding's actions cannot be imputed to Prudential, the Court finds that Prudential did not continue to litigate the Florida action after the Preliminary Injunction took effect. The last action that Prudential took in Perlman's case, however, was its presumed participation in the oral argument before the Third District Court of Appeal on March 20, 1996. While the Third District Court of Appeal issued an

opinion on January 22, 1997, it was Spalding, rather than Prudential, who chose to continue to litigate the case and sought review of the Third District Court of Appeal's decision in the Florida Supreme Court. Furthermore, contrary to Perlman's suggestion that the timing of Prudential's Notice of Permanent Injunction in the Florida state court on May 28, 1997 was dictated by the timing of the appeals process in Florida, Prudential filed its Notice of Permanent Injunction a month before the Florida Supreme Court's Order declining to exercise jurisdiction was entered on June 23, 1997. Thus, Perlman fails to show that Prudential made a misrepresentation that Perlman relied upon to his detriment.

 Finally, Perlman contends that the doctrine of judicial estoppel should preclude Prudential from relying on the class action in order to avoid litigating his action. The doctrine of judicial estoppel, "which prevents a litigant from asserting a position inconsistent with one previously asserted, applies when: (1) the party's position is inconsistent with a position taken in the same or in a previous proceeding and (2) the party asserted either or both of the inconsistent positions in bad faith." *Krouse v. American Sterilizer Co.,* 126 F.3d 494, 501 (3d Cir.1997) (quotation omitted). Because, as discussed above, Perlman fails to show that Prudential took an inconsistent position in his case, the Court declines to apply the doctrine of judicial estoppel.

**D. The Court Has the Power to Consider Late Opt–Out Requests**

 While "[a]dequacy of notice to the class as a whole determines the binding effect of a class settlement on an individual class member," *In re VMS Secs. Litig.,* No. 89 C 9448, 1992 WL 203832, at *5 (N.D.Ill. Aug. 13, 1992), a Court retains the power to permit class members an extension of time to opt out pursuant to Federal Rules of Civil Procedure 6(b)(2), 60(b) or 23(d). The movants contend that the Court should grant them an extension of time to opt out because

(1) the judgment to be enforced is void, (2) a plethora of reasons to support a finding of excusable neglect, and (3) extraordinary circumstances or extreme hardship.[14]

**1. Prudential Has the Right to Finality of the Litigation**

The Court must consider the potential impact that late opt-outs would have on the Settlement. Prudential maintains that to ensure the finality the Settlement was intended to achieve, it is necessary for the Court to enforce the opt-out deadline. *See In re Gypsum Antitrust Cases,* 565 F.2d 1123, 1127–28 (9th Cir.1977) (emphasizing that in managing a large class settlement consisting of nearly one-half million people, " 'a cutoff date [for claims] is essential and at some point the matter must be terminated' ") (citation omitted). The impetus for defendants to settle class action suits is finality of the litigation. *See, e.g., O'Brien v. Nat'l Property Analysts Partners,* 739 F.Supp. 896, 900 (S.D.N.Y. 1990) (recognizing that a court must balance the policy in favor of hearing a litigant's claims on the merits with the policy in favor of finality). Therefore, to grant leave for an extension of time to file exclusions could discourage settlement and undermine the finality of judgment. *See In re Prudential Secs. Inc. Ltd. Partnerships Litig.,* 164 F.R.D. at 371–72 ("Defendants would be loath to offer substantial sums of money in compromise settlements of class actions unless they can rely on the notice provisions of Rule 23 to bind class members.") (quoting *In re VMS Ltd. Partnership Secs. Litig.,* 1995 WL 355722, at *2); *see also Burns v. Elrod,* 757 F.2d 151, 155 (7th Cir.1985) ("Defendants are entitled to some certainty in their settlement liability...."); *Grace v. City of Detroit,* 145 F.R.D. 413, 418 (E.D.Mich.1992) (accepting late claims would cause the defendant a "neverending expansion of its liability as more class members with equally worthy explanations appeared"); *In re Four Seasons Secs. Laws Litig.,* 60 F.R.D. 598, 602 n. 10 (W.D.Okla.1973) ("The notice provisions of Rule 23 ... are designed to provide due process and, at the same time, achieve finality in class litigation.").

---

**14.** Dear and Kilgallon submitted responses after the October 3, 1997 deadline and did not file an application for an extension of time. The Court ordered that Dear's October 20, 1997 submission not be considered. Likewise, Kilgallon's November 6, 1997 submission will not be considered.

Movants insist that there would be no prejudice to Prudential because there are only a small number of requests and the requests are within months of the opt-out deadline. The Court declines to employ such considerations in deciding whether to permit the movants an extension of time to opt out. Significantly, courts have denied an extension of time to opt out, despite chronological proximity to the deadline. *See. e.g., Burns,* 757 F.2d at 153 (rejecting opt-out request made within one year of the deadline); *In re Prudential Secs. Inc. Ltd. Partnerships Litig.,* 164 F.R.D. at 367 (denying all requests including requests made three weeks after the deadline); *In re VMS Secs. Litig.,* 1992 WL 203832, at *5 (denying request for an extension of time to opt out made within eight months of the deadline). Indeed, for the Court to establish an arbitrary cut-off date would be unfair to latecomers who may have more compelling reasons than those class members now before the Court.

The Reeds, arguing that there is no prejudice to the parties if the Court permits them an extension of time to opt out because there have been no known discussions regarding settlement amounts, incorrectly assume that the Court's concern with prejudice is limited to class members. To the contrary, the Court is concerned with the prejudice to the settling defendant, Prudential, rather than to the class members. Moreover, in this case, the Court need not consider prejudice to the class members because the settlement funds are unlimited and, therefore, there can be no prejudice to class members.

### 2. The Court's Final Order and Judgment is Valid Because Notice to Class Members Comported With Due Process

Rule 60(b) of the Federal Rules of Civil Procedure provides that a district court may grant relief from a judgment or order for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence; (3) fraud, misrepresentation or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied; (6) any other reason justifying relief from the operation of the judgment. *See* Fed.R.Civ.P. 60(b).

Movants assert that this Court cannot enforce the Final Order and Judgment because it is void. They allege that a final judgement is void where a court acted in a manner inconsistent with due process of law. *See In re VMS Ltd. Partnership Secs. Litig.,* 1995 WL 355722, at *2. Rule 60(b)(4) provides that a movant can obtain relief from judgment and be permitted to file a late opt-out notice under Rule 60(b)(4), but the movant must show that the notice to the class failed to comport with constitutional due process requirements.[15] *See id.* Because the Court has found that the notice in this case was constitutional, the judgment is not void. Consequently, the Court will deny requests for an extension of time to opt out pursuant to Rule 60(b)(4).

### 3. The Court Cannot Grant an Extension of Time Pursuant to Rule 60(b)(1), Rule 6(b)(2), and Rule 23(d) Because the Movants Have Not Demonstrated Excusable Neglect

Rule 60(b)(1) provides that a district court can provide for relief from a judgment for excusable neglect. *See* Fed. R.Civ.P. 60(b)(1). Similarly, the standard for relief pursuant to Rule 6(b)(2), which empowers a district court to grant an extension of time[16], is also excusable neglect. *See In re Prudential Secs. Inc. Ltd. Partnerships Li-*

---

**15.** Rule 60(b)(4) is considered in conjunction with Rule 23:

A class member may also seek relief from judgment after settlement under Rule 60(b)(4), on the ground that the judgment is void as to him or her. Rule 60(b)(4) must be read in conjunction with Rule 23, in order to determine what constitutes a binding judgment for purposes of Rule 23. It is generally acknowledged that the touchstones of due process in the class context are notice and adequacy of representation.

3 *Newberg,* § 11.63 at 171. Because, the movants do not contest the adequacy of representation, the Court will limit its review to whether Class Notice comported with due process.

**16.** Rule 6(b)(2) provides:

When by these rules or by a notice given thereunder or by order of court an act is required or

*tig.*, 164 F.R.D. at 369; *Georgine v. Amchem Prods., Inc.*, No. 93–0215, 1995 WL 251402, at \*2 (E.D.Pa. April 26, 1995); *Mars Steel Corp. v. Continental Illinois Nat'l Bank & Trust Co.*, 120 F.R.D. 51, 52 (N.D.Ill.1988). Finally, Rule 23(d) allows a court to enter orders managing a class action. *See* Fed. R.Civ.P. 23(d). Such orders would include those enlarging the time to opt out of the class. *See In re Prudential Secs. Inc. Ltd. Partnerships Litig.*, 164 F.R.D. at 368–69. As under Rules 60(b)(1) and 6(b)(2), to support an enlargement of time under Rule 23(d), the moving party must also establish excusable neglect. *See id.* at 369. (asserting that the movant must demonstrate excusable neglect) (citing *In re Del–Val Fin. Corp. Secs. Litig.*, 154 F.R.D. 95, 96 (S.D.N.Y. 1994)); *see also Supermarkets Gen. Corp. v. Grinnell Corp.*, 490 F.2d 1183, 1186 (2d Cir. 1974) (finding that the relevant standards for relief under Rule 6(b) are the same as under Rule 23).

While the standard for granting relief pursuant to Rule 6(b)(2), Rule 60(b)(1), and Rule 23(d) is the same, *see Supermarkets Gen.*, 490 F.2d at 1186 ("... Rules 6(b)(2) and 60(b)(1) cover excusable neglect by a party ... [and] the relevant standards are no different if the matter is viewed as arising simply under the court's discretion to implement Rule 23."), courts frequently apply Rule 6(b)(2) to motions for an extension of time to opt out of a class. *See, e.g., In re Four Seasons Secs. Laws Litig.*, 493 F.2d 1288, 1290 (10th Cir.1974); *In re Prudential Secs. Inc. Ltd. Partnerships Litig.*, 164 F.R.D. at 368–69; *Georgine v. Amchem Prod., Inc.*, 1995 WL 251402, at \*4; *In re Del–Val Fin. Corp. Secs. Litig.*, 154 F.R.D. at 96; *Mars Steel*, 120 F.R.D. at 52;.

 To establish excusable neglect, a movant must show both good faith and a reasonable basis for not acting within the specified period. *See In re Del–Val Fin. Corp. Secs. Litig.*, 154 F.R.D. at 96. Even upon a finding of excusable neglect, however, it is still in the district court's discretion whether to grant the extension. *See* Fed. R.Civ.P. (6)(b)(2) ("the court for cause shown may at any time in its discretion ..."); *see also In re Four Seasons Secs. Laws Litig.*, 493 F.2d at 1290 (recognizing that a finding of excusable neglect under Rule 6(b)(2) requires both a demonstration of good faith and a reasonable basis for not complying within the specified period); *Supermarkets Gen.*, 490 F.2d at 1186 (explaining that the determination of excusable neglect rests "within the sound discretion of the judge, and his ruling will be upset only if discretion is abused.").

Although courts have granted leave for an extension of time to opt out, it is an infrequent occurrence. *See. e.g., In re Prudential–Bache Energy Income Partnerships Sec. Litig.*, MDL No. 888, 1995 WL 263879, at \*6 (E.D.La. May 4, 1995) (permitting an extension of time to opt out where notice had been sent to the wrong address); *In re Del–Val Fin. Corp. Secs. Litig.*, 154 F.R.D. at 95 (directing that a class member be permitted an extension of time to opt out where class member was already in arbitration with a defendant who was not one of the settling defendants and an arbitration hearing was scheduled a few weeks after the receipt of the Class Notice); *In re VMS Secs. Litig.*, 1992 WL 203832, at \*5 (permitting a class member an extension of time to opt out where claim of medical emergency substantiated); *Trist*, 89 F.R.D. at 4 (allowing one group an extension of time to opt out where the defendant had moved to exclude the group and recognizing that inclusion of the group would delay benefits to the remainder of the class).[17]

The movants in this case proffer various reasons why the Court should find that they have established excusable neglect and permit them an extension of time to opt out: (1)

---

allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion ... upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect; ...
Fed R. Civ. P. 6(b)(2).

17. While the Reeds rely on *Silber v. Mabon*, 957 F.2d 697 (9th Cir.1992) for the proposition that courts can grant late opt outs, the court in *Silber* declined to address the plaintiff's request for late opt out and remanded the case to the trial court for further proceedings. *See id.* at 699–700.

no notice or late notice of opt out or notice sent to wrong address, (2) pending action effectively served as notice of opt out, (3) lack of notice to counsel, (4) insufficient time to opt out, and (5) misunderstanding that policies and/or claims are not covered by the Settlement.

### (a) Prudential's Notice Program Satisfies Due Process and Rule 23, Despite That All Class Members May Not Have Received Individual Notice

■ Movants argue that they did not receive Class Notice, received notice late, or in Perlman's case, that notice was sent to the wrong address despite knowing the correct address. As discussed above, this Court has found that the dissemination of notice in this case comported with due process and Rule 23 of the Federal Rules of Civil Procedure despite the lack of receipt of individual notice by all class members. Courts have held that notice to the last known address as well as notice to an incorrect address where the defendant had been notified of the correct address met the due process requirement of notice through reasonable effort. *See, e.g., In re Prudential Secs. Inc. Ltd. Partnerships Litig.,* 164 F.R.D. at 369 (denying late opt-out request where notice was mailed to old address); *In re VMS Ltd. Partnership Secs. Litig.,* 1995 WL 355722, at *2 (denying late opt-out request where notice was mailed to old address and plaintiff claimed that he notified defendant of new address); *Breslow v. Prudential–Bache Properties, Inc.,* No. 91 C 1230, 1994 WL 478611 at *4 (N.D.Ill. Sept. 1, 1994) (denying late opt-out request where the notice was returned as undeliverable because the notice lacked a city, state, and zip code). Therefore, the Court will deny requests for an extension of time to opt out where movants allege that they did not receive notice, received notice late, or that Prudential mailed notice to the wrong address.

### (b) Class Members Did Not Opt Out By Filing a Lawsuit Because the Filing of a Lawsuit Does Not Comply With the Opt Out Procedures Required by the Settlement

■ Buckman, Bowen, the Ortegas and Perlman claim that because Prudential was put on notice of their intent to litigate outside of the Class Settlement, they effectively opted out when they filed their lawsuits. Class members, however, must file a valid request for exclusion regardless of whether they have an individual action filed and pending prior to the opt-out deadline. *See Penson v. Terminal Transp. Co.,* 634 F.2d 989, 996 (5th Cir.1981) (observing that class action binds absent class members who filed individual actions prior to final judgment); *In re Prudential Secs. Inc. Ltd. Partnerships Litig.,* 164 F.R.D. at 370 ("It is well established that 'pendency of an individual action' does not excuse a class member from filing a valid request for exclusion."); *In re VMS Secs. Litig.,* 1992 WL 203832, at * 3 (concluding that the pendency of an individual action did not excuse class members from filing valid opt-out request); *Supermarkets Gen. Corp. v. Grinnell Corp.,* 59 F.R.D. 512, 513 (S.D.N.Y.1973) *aff'd,* 490 F.2d 1183 (2d Cir.1974) (same). "[T]he time sequence of the filing of the individual claim and the class action is therefore irrelevant to the operation of the *res judicata* bar." *Penson,* 634 F.2d at 996.

The Class Notice provided a detailed procedure for a notice of exclusion:

### 9. EXCLUSION FROM THE CLASS

If you wish to exclude yourself from the Class with respect to one or more Policies, you must comply with the requirements described in this Section. You must send a formal, written request for exclusion as to each such Policy to the following address:

Prudential Class Action Settlement P.O. Box 9354 Boston, Massachusetts 02205–9354

**Your written request for exclusion must be *postmarked by no later than* December 19, 1996, otherwise it will be untimely and your request for exclusion will be waived and you will be bound by the settlement and all orders and judgments in the actions.**

(Class Notice at 17.) (emphasis in original). The letter had to:

(i) identify by policy number the Policy or Policies for which your are requesting exclusion ..., (ii) state that you want to be excluded from the Class with respect to each such Policy or Policies, and (iii) include your name, your address, your telephone number, the name and caption of this lawsuit, and your signature.

(*Id.*) Thus, the Class Notice clearly described the simple steps required to opt out. The fact that 19,000 class members managed to opt out evidences the clarity and simplicity of the opt out procedure. Consequently, the Court will deny the requests for an extension of time to opt out based on this ground.

### (c) The Class Notice Adequately Informed Class Members With Pending Actions That They Had to Opt Out in Order to Continue to Litigate Their Actions

 Movants argue that the Class Notice was inadequate to put class members with pending actions on notice that they had to follow the opt out procedures set forth in the Class Notice. Their argument fails, however, because the Class Notice explicitly informs class members that, absent exclusion, a class member will not be able to continue his or her own lawsuit.

The October 28 Order stated that "all Policyholders who have not submitted a timely, written request for exclusion from the Class shall be bound by all proceedings, orders and judgments in the Actions, even if those persons have previously initiated or subsequently initiate individual litigation or other procedures ..." (Oct. 28 Order ¶ 12.) The Notice packet contained several references to litigation and the consequences of failure by class members to opt out. Significantly, the Ryan Letter advises:

> **YOU DO NOT NEED TO TAKE ANY ACTION NOW TO RECEIVE RELIEF UNDER THE CLASS ACTION SETTLEMENT. HOWEVER, YOU MUST ACT NOW IF YOU WISH TO OBJECT OR BE EXCLUDED FROM PARTICIPATING IN THE CLASS ACTION SETTLEMENT. IF YOU EXCLUDE YOURSELF FROM THE CLASS, YOU WILL RETAIN THE ABILITY TO BRING YOUR OWN LAWSUIT AGAINST THE COMPANY, BUT YOU WILL NOT BE ELIGIBLE FOR RELIEF PROVIDED BY THE CLASS ACTION SETTLEMENT. IF YOU REMAIN A MEMBER OF THE CLASS, YOU CANNOT BRING YOUR OWN LAWSUIT AGAINST PRUDENTIAL FOR MISLEADING SALES PRACTICES.**

(Ryan Letter.) Also, the Question and Answer Brochure explains:

> **22. Will I still have the right to sue if I participate in the settlement?**
>
> No. Unless you exclude yourself from the Class pursuant to Section 9 of the Class Notice, you will be *automatically prevented from bringing your own lawsuit* or other action against Prudential based upon the sale, servicing or operation of your policy. If you want to participate in the settlement, you should not exclude yourself from the Class. If *you want to sue Prudential separately,* you should exclude yourself from the Class.

(Question and Answer Brochure at 14.) (emphasis added). In addition, the Class Notice states:

> **15. PRELIMINARY INJUNCTION**
>
> All Policyholders ... are hereby enjoined from filing, commencing, prosecuting, continuing, litigating, intervening in or participating as class members in, any lawsuit in any jurisdiction based on or relating to the facts and circumstances underlying the claims and causes of action in this lawsuit, unless and until such Policyholder has timely excluded herself or himself from the Class.

(Class Notice at 24.) Finally, Class Notice incorporates the full text of the Release, which provides in relevant part:

> Plaintiffs and all Class Members hereby expressly agree *that they shall not now or hereafter institute, maintain or assert* against the Releasees ... and release and discharge the Releasees from, any and all causes of action, claims, damages, equitable, legal and administrative relief, interest, demands or rights, of any kind or nature whatsoever, whether based on Fed-

eral, state or local statute or ordinance, regulation, contract, common law, or any other source, *that have been, could have been, may be or could be alleged or asserted now or in the future* . . . on the basis of, connected with, arising out of, or related to, in whole or in part, the Released Transactions and servicing relating to the Released Transactions, which include without limitation:

> (i) any or all of the acts, omissions, facts, matters, transactions or occurrences that were directly or indirectly alleged, asserted, described, set forth or referred to in the Action;

(Class Notice at 26–27.) (emphasis added).

The Class Notice clearly notified class members that if they failed to opt out, they could not continue their individual lawsuits. While the Ryan letter and Question 22 do not specifically mention pending lawsuits, they do not exclude pending lawsuits. Section 9 of the Class Notice states that policyholders who do not exclude themselves will be bound by the Settlement. Finally, the Preliminary Injunction and the Release clearly state that class members who do not opt out cannot maintain or continue their independent actions.

Bowen and Perlman cite *McCubbrey*, 71 F.R.D. at 62, in support of the proposition that Prudential's Class Notice is inadequate. Reliance on *McCubbrey* is misplaced, however, because unlike the Prudential Class Notice, the Class Notice in *McCubbrey* made no reference to pending lawsuits. 71 F.R.D. at 68 ("Nothing in the detailed, 29–page Notice would alert even a careful reader that he must satisfy the exclusion requirements or suffer the consequence of permitting his ongoing litigation to evaporate.").[18] As discussed above, Prudential's Class Notice clearly stated that class members would be barred from continuing their independent actions if they did not opt out.

**(d) Neither Rule 23 Nor Due Process Requires Prudential to Send Notice to Policyholder's Counsel**

Buckman and the Ortegas argue that their counsel should have received notice of the opt out deadline from Prudential or from Liaison Counsel. Lack of notice to counsel, however, cannot constitute a basis for finding excusable neglect. Rule 23 and due process do not require or imply that counsel of class members pursuing individual actions are entitled to notice of the opt out deadline. *See In re VMS Secs. Litig.*, 1992 WL 203832, at *3. Indeed, even in *Supermarkets Gen.*, where supplemental notice was provided to individual counsel, the court held that such notice was not required to meet due process. 490 F.2d at 1186.

**(e) Class Members Had Sufficient Time to Opt Out Where Class Notice Was Mailed on or Before November 4, 1996, and the Deadline to Opt Out Was December 19, 1996**

The movants contend that the opt out period was too short, precluding class members of meaningful review of the Proposed Settlement. The Court disagrees. In the present case, the October 28, 1996 Order required that individual notice be sent no later than sixty days before the Fairness Hearing, which was scheduled for January 21, 1997. While this schedule permitted all such notices, therefore, to be mailed by November 21, 1996, Class Notice was actually mailed on or before November 4, 1996. The movants complain that the November 21, 1996 date allowed class members less than one month to make the decision to either opt out of the class or to remain part of the class. Moreover, movants contend that during that same one-month period, class members who decided to opt out were required to prepare and file written objections to the settlement agreement.

Courts have routinely approved Class Notice mailings where the deadline to opt out was between thirty and sixty days. *See White v. Nat'l Football League*, 41 F.3d 402,

---

18. Bowen makes several suggestions about what could have been in the Class Notice, including a recommendation that class members consult with a lawyer. However, the Court has found that the content of the Class Notice satisfied due process and Rule 23. Also, Bowen's suggestions do not mitigate the fact that his notice to opt out, dated January 13, 1997 and received January 24, 1997, was received after the December 19, 1996 opt-out deadline.

408 (8th Cir.1994), (finding that notice mailed "approximately one month prior to the first settlement hearing" was adequate notice), *cert. denied,* 512 U.S. 1220, 115 S.Ct. 2569, 132 L.Ed.2d 821 (1995); *Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1375 (9th Cir. 1993) (concluding that notice mailed thirty-one days before deadline for objections and forty-five days prior to hearing was timely), *cert. denied,* 512 U.S. 1220, 114 S.Ct. 2707, 129 L.Ed.2d 834 (1994); *Marshall,* 550 F.2d at 1178 (determining that notice mailed twenty-six days before the deadline for opting out of the settlement was adequate); *Milstein v. Werner,* 57 F.R.D. 515, 518 (S.D.N.Y.1972) (concluding that notice mailed thirty-eight days before scheduled settlement hearing was adequate); *see generally* 2 *Newberg* § 8.37, at 8–118 (observing that the bulk of notices directed thirty- to sixty-day intervals between mailing or publishing class notice and the deadline for the recipient to respond).

In the present case, Class Notice was mailed on or before November 4, 1996 and objections and opt-outs were due by December 19, 1996. Thus, class members had approximately forty-five days to opt out of the Class after receiving Class Notice.[19] As the Court found in its March 17, 1997 Opinion, this amount of time is sufficient. (Mar. 17, 1997 Opinion, Conclusions of Law 281.) Because Class Notices were actually mailed out by November 4, 1996, the November 21, 1996 date is irrelevant. Finally, contrary to the movants assertions, only class members who wished to object were required to prepare and file their objections to the Proposed Settlement in writing; class members who decided to opt out could object to the Proposed Settlement but were not required to do so.

**(f) Class Members Are Bound to the Settlement Notwithstanding Their Failure to Understand That the Settlement Covered Their Policies or Claims**

Dear and the Reeds contend that they did not need to opt out of the Settlement because the Settlement does not encompass their claims or, alternatively, that the Class does not fairly and adequately represent their claims. The Court disagrees.

Class notice is adequate if it "may be understood by the average class member." *In re Nissan Motor Corp. Antitrust Litig.,* 552 F.2d 1088, 1104 (5th Cir.1977); *see also Rodgers v. United States Steel Corp.,* 70 F.R.D. 639, 647 (W.D.Pa.1976) (directing that notice is sufficient if "it will enable reasonable and competent individuals to make an informed choice"). Here, as the Court found, the Class Notice "provided class members the information necessary to make an informed and intelligent decision whether to participate in the class...." (Mar. 17, 1997 Opinion, Conclusions of Law, ¶¶ 110, 119, 134.)

**i. Tatiana Dear's Claim of Negligence in the Servicing of Her Husband's Policy Is Encompassed By the Class Settlement**

Tatiana Dear brought an action based on a policy held by her late husband, Charles Dear, who died during the opt-out period on November 18, 1996. Dear claims that she is not a policyholder and is not suing on behalf of her husband's estate. Dear contends that she is a contract beneficiary who is merely seeking to enforce her rights as a beneficiary. Prudential, maintaining that Dear's claim is not unique and is covered by the Settlement, argues that Dear is seeking to recover based on alleged negligence in servicing her husband's policy, rather than on a claim to recover a death benefit. Prudential also argues that class members were notified that the Settlement covers claims pertaining to deceased insureds. Prudential points out that Carol J. Nicholson, one of the class representatives in the consol-

---

**19.** Bowen claims that he received the Class Notice only three weeks before the opt-out deadline. Assuming this to be true, it should not have been unduly burdensome for either Bowen or his counsel to flip to the back of the Notice booklet, read the Opt Out and Release provisions, and mail the required opt-out letter. Thus, the Court is not persuaded that Bowen or his counsel were prejudiced by receipt of the Class Notice three weeks prior to the opt-out deadline.

idated class action complaint, submitted an identical claim in the ADR process.[20]

While Dear's claim that her action is disparate from other similarly situated policyholders has facial appeal and her personal circumstances evoke the sympathy of the Court, her argument belies the allegations in her complaint. Similar to other policyholders, Charles Dear possessed a Prudential Variable Appreciable Life ("VAL") policy. Tatiana Dear claims that in response to inquiries regarding the receipt by the Dears of notices requiring payment, a Prudential agent misled them to the extent that premium payments were not required in order to keep the VAL policy in full force and effect. Following receipt of a letter informing Charles Dear that the policy would lapse if a payment was not made, the policy lapsed on October 22, 1996. Charles Dear died on November 18, 1996. Tatiana Dear submitted a request for insurance benefits on December 10, 1996, and instead of the full death benefit of $100,-000, Prudential paid Tatiana Dear $4963.82.

Tatiana Dear's suit against Prudential alleges that the insurance representative negligently failed to inform Charles Dear of the status of the VAL policy and such negligence was the cause of the lapse of the policy. This is not a contract claim but rather a claim that Prudential improperly sold, serviced or operated Charles Dear's policy before his death. Tatiana Dear's circumstances, thus, are no different than those of Carol Nicholson's. The Class Notice defines "Released Transactions" as:

> the marketing, solicitation, application, underwriting, acceptance, sale, purchase, operation, retention, administration, servicing, or replacement by means of surrender, partial surrender, loans respecting, withdrawal and/or termination of the Policies or any insurance policy or annuity sold in connection with, or relating in any way directly or indirectly to the sale or solicitation of, the Policies, which include those matters described in Section II below.

(Class Notice at 26.) The practices that Dear complains of are practices specifically included in the description of "Released Transactions." Accordingly, the Court will not grant Tatiana Dear an extension of time to opt out of the Settlement.

Class Notice informed class members that the Settlement covered claims pertaining to deceased insureds. The Class Notice states: "relief may be available, under certain circumstances, even if the insured has died and death benefits have previously been paid on a policy for which you are a successor in interest (i.e., executor, heir, etc.)" (Class Notice at 9.) The accompanying Question and Answer Brochure provides:

> **17. If an eligible policyholder is deceased, can his or her legal representative still participate in the settlement?**
>
> Yes. If a policyholder is eligible (as described in Answer Nos. 10 and 16) but is deceased, a claim can be made in the ADR Process by the person or entity currently representing the legal interest of the deceased policyholder. Depending on the circumstances, this may be the deceased policyholder's executor or authorized personal representative in connection with an estate or other administration of the deceased policyholder's property.

(Question and Answer Brochure at 13.) If Tatiana Dear is entitled to the full death benefit, such relief is available through the ADR process. The Prudential Alternative Dispute Resolution Guidelines ("Guidelines") provide detailed procedures for handling claims involving "Deceased Insureds." The Guidelines specifically include claims where a policy has lapsed and the insured under the policy died or dies prior to the expiration of the ADR process election period. Depending on the score for the claim, a claimant could be eligible for full death benefits.

**ii. The Court Will Not Grant Eleanor, Susan, and Steven Reed an Extension of Time to Opt Out Because Their Claims are Encompassed By the Settlement**

The Reeds, collectively, have four Prudential policies that they own or owned

---

**20.** Nicholson is the Executrix of her late husband's estate and seeks to recover the full death benefits due to her as the beneficiary of her late husband's estate.

during the Class Period.[21] The Reeds contend that they should be permitted to opt out because their claims are not covered by the Class Settlement. Eleanor Reed alleges that Prudential agents induced her to surrender her annuity with another company to purchase the Prudential policy.[22] In addition, the Reeds argue that the state court relief Eleanor Reed seeks places her outside the class. The Court disagrees. The Reeds' policies and claims are encompassed by the Class Settlement. The claim raised by the Reeds, that Eleanor Reed surrendered the annuity with another company, is no different from the other class members who raised Finance Insurance Claims. Furthermore, her misrepresentation claims concern the purchase of the class policy not the purchase of the annuity at the other company.

Also, the Reeds cannot proceed with an individual state law claim because the Class Settlement bars a class member from pursuing an individual state law claim arising from the same factual predicate underlying the claims in the settled class action. *See TBK Partners Ltd. v. Western Union Corp.*, 675 F.2d 456, 460 (2d Cir.1982); *see also In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 221–22 (5th Cir.1981) (concluding that where class members have been properly notified, the court as part of a settlement could release not only those claims before the court, but also claims not pending before the court which could have been alleged by reason of or in connection with the facts of the pending claims); *In re VMS Secs. Litig.*, 145 F.R.D. 458, 463 (N.D.Ill.1992) (maintaining that a federal court has the subject matter jurisdiction to enjoin state law claims encom-

passed by the release provisions of the settlement agreement), *aff'd in part and vacated in part on other grounds*, 21 F.3d 139 (7th Cir.1994). Unquestionably, the Release in the Class Notice specifically stated that the Class Settlement would bar the state law claims of those who did not opt out of the Class. (Class Notice at 26–27.)

### 4. The Court Will Not Grant Relief Pursuant to Rule 60(b)(6) Because the Movants Have Failed to Demonstrate Either Extraordinary Circumstances or Extreme Hardship

■■■■■ Movants assert that they are entitled to relief pursuant to Rule 60(b)(6). Rule 60(b)(6) requires that a movant demonstrate extraordinary circumstances or extreme hardship. *See* Fed.R.Civ.P. 60(b)(6); *see also In re Prudential Secs., Inc. Ltd. Partnerships Litig.*, 164 F.R.D. at 369 n. 5.[23] The Court has addressed all the arguments raised by the movants, and the movants fail to raise any additional basis upon which the Court could consider relief pursuant to Rule 60(b)(6) grounds. *See In re Four Seasons Secs. Laws Litig.*, 502 F.2d 834, 841 (10th Cir.) (determining that Rule 6(b)(6) motion must be based upon some reason other than those stated in clauses (1)-(5)) (citation omitted), *cert. denied*, 419 U.S. 1034, 95 S.Ct. 516, 42 L.Ed.2d 309 (1974). Indeed, it would be difficult for a movant to demonstrate extraordinary circumstances or extreme hardship given that the ADR process is a process in which policyholders can obtain full remediation.[24] As this Court found, the ADR process:

---

21. The Reeds also complain that they own three additional policies which were never identified on any Prudential notices to them. According to Prudential's records, these policies were purchased in 1955, 1960, and 1981. Prudential did not refer to these policies because they were purchased outside the Class Period (January 1, 1982 through December 31, 1995). They are nevertheless encompassed by the Settlement under the provisions governing Financed Insurance Claims.

22. The Reeds filed suit against Prudential on September 2, 1997. On October 30, 1997, the Court stayed the Reeds' action, pursuant to the Court's October 28, 1996 Order, pending the Court's decision as to whether the Reeds will be permitted to opt out of the Class Settlement.

23. Claiming that Rule 60(b)(6) is a basis for relief, Flauto, Griffis, and Meyer mistakenly cite *Presidential Life Ins. Co. v. Milken*, 946 F.Supp. 267 (S.D.N.Y.1996). However, the Court in this case noted that "Rule 60(b) relief is particularly inappropriate where the relevant challenge is brought to a class action settlement." *Id.* at 278 (citations omitted).

24. Movants' contention that the Class Settlement does not permit punitive damages cannot be construed as either extraordinary circumstances or extreme hardship. While the Class Settlement permits full compensatory relief, class members are barred from seeking punitive damages and attorney's fees. Moreover, such a limitation does not warrant relief pursuant to Rule 60(b)(6).

is a fair and swift alternative to litigation. The ADR process allows a class member to attain claim resolution, more quickly and easily than would be possible through litigation. The ADR process also is less expensive than litigation, because there are no costs to the class member; Prudential has agreed to pay all costs.

(Mar. 17, 1997 Opinion, Findings of Fact ¶ 120.) Thus, the Court will deny an extension of time to opt out based on Rule 60(b)(6).

## E. The Court Will Permit Class Members Who Have Not Been Granted an Extension of Time to Opt Out to File Election Forms

Class members will have the opportunity to fully participate in the Class Settlement.[25] The Court will require Prudential to permit the class members that have been denied an extension of time to opt out to file Election Forms and the concomitant claim forms.[26]

## CONCLUSION

For the reasons set forth above, the Court (1) will grant Prudential's motion to dismiss the actions of Bennett, Gamez, Kilgallon, and Ortega, (2) will permanently enjoin the pending actions of Adamakis, Bowen, Buckman, Dabdoub, Davis, Dear, the Hanans, Marrs, Perlman, the Reeds, Ruffins, Rutledge and Trammel,[27] (3) will permanently enjoin the commencement of an action by Flauto, the Grays, Griffis, the Harpers, Meyer, Naliboff, and Gerald Reed, (4) will require Prudential to permit the affected class members to file late Election Forms, and (5) will deny the cross-motions of class members.

An appropriate Order is attached.

25. Adamakis, Davis, Flauto, Gamez, the Grays, Griffis, the Hanans, the Harpers, Kilgallon, Marrs, Meyer, and Naliboff filed Election Forms and chose the ADR process. Perlman and the Reeds filed Election Forms which were conditioned on their inability to pursue their independent actions. Ruffins filed an Election Form and chose one of the remedies under BCR. Bowen, the Buckmans, Dabdoub, Dear, the Ortegas, Gerald Reed, Rutledge, and Trammel did not file Election Forms. Bennett filed an Election Form

## ORDER

In accordance with the Court's Opinion filed herewith,

It is on this 1st day of December, 1997

ORDERED that Prudential's motion to dismiss Bennett, Gamez, Kilgallon, and Ortega is granted; and it is further

ORDERED that Prudential's motion to permanently enjoin the pending actions of Adamakis, Bowen, Buckman, Dabdoub, Davis, Dear, the Hanans, Marrs, Perlman, the Reeds, Ruffins, Rutledge, and Trammel is granted; and it is further

ORDERED that Prudential's motion to permanently enjoin the commencement of an action encompassed by paragraph 8 of the March 17, 1997 Final Order and Judgment by Flauto, the Grays, Griffis, the Harpers, Meyer, Naliboff, and Gerald Reed is granted; and it is further

ORDERED that Prudential will send Election Forms to the affected class members by Certified Mail Return Receipt Requested within ten days of the entry of this Order, and Election Forms must be returned to Prudential within thirty days of their receipt; and it is further

ORDERED that class members' cross-motions are denied.

but did not chose between the ADR process and BCR.

26. Indeed, Prudential does not object to the participation in the Class Settlement by any class member who is subject to this motion.

27. Adamakis, Dabdoub, and the Hanans have agreed in principle to dismiss their actions, but they cannot agree with Prudential on the language of the Stipulation of Dismissal.